UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**Case Number: 22-20221-CR-MARTINEZ**

UNITED STATES OF AMERICA,

v.

ISAAC ALVAREZ,

      Defendant.

_____/

## ORDER ON MOTION TO SUPPRESS

**THIS CAUSE** came before the Court on Defendant Isaac Alvarez's Motion to Suppress. (ECF No. 33).  The Government has filed a response to the Motion to Suppress, (ECF No. 39), to which Defendant has replied, (ECF No. 48).  In addition, after holding an evidentiary hearing on the Motion to Suppress, the parties submitted written oral arguments.  (ECF No. 54 & 55).  Having carefully considered the briefing, evidence, record, applicable law, and being otherwise advised in the premises, the Court denies the Motion to Suppress.

### I.      BACKGROUND

Around 10:00 a.m. on December 29, 2021, an anonymous caller reported that a black "truck" had been parked behind her home since the night before. The caller explained that the car was parked in an alleyway next to her backyard.  The caller provided her address, which was in a high crime area.

Miami-Dade Police Officers Guy Julien and Giselle Reyes responded to the call.  Officer Julien arrived at the scene first and found a black Nissan Pathfinder parked in a grassy alleyway.  Officer Julien positioned his patrol vehicle directly behind the Pathfinder.  The Pathfinder was

1

parked head in the alley.  Officer Julien parked behind the Pathfinder.  He then approached the Pathfinder with his gun drawn.  He could not see into the vehicle because the windows were heavily tinted.  As he approached the Pathfinder, Officer Julien observed Defendant opening the driver-side door and throwing something on the ground.  Officer Julien pointed his gun at Defendant and ordered Defendant to get out of the car and show his hands.  Defendant exited the Pathfinder in his underwear.  Defendant closed the driver-side door when he exited the vehicle.  Officer Julien asked Defendant to open the door.  Defendant complied.  Officer Julien asked if anyone else was in the car.  Defendant informed Officer Julien that his "wife" was also in the car.  Officer Julien told the woman, later identified as Brittany Caffree, to exit the vehicle and join the Defendant next to Officer Julien's patrol vehicle.  Caffree exited the Pathfinder from the rear-passenger-side door covered in a blanket because she was not wearing underwear.

Officer Julien then checked the rear-passenger-side area of the Pathfinder to see if there were other occupants in the vehicle.  In doing so, he smelled a strong odor of marijuana.  He also noticed groceries, clothing, and other belongings in the backseat area of the vehicle.  Officer Julien asked Defendant why he was parked in the grass behind the neighborhood.  Defendant explained that he had been sleeping in the car since the night before because he had run out of gas and that a friend was going to bring him gas.  Officer Julien proceeded to ask Defendant several questions, such as when Defendant's friend was going to arrive with gas.  Officer Julien asked for Defendant's ID, and Defendant and Caffree said that their IDs were in the Pathfinder.

About a couple minutes after Caffree exited the Pathfinder, Officer Reyes arrived at the scene.  Officer Reyes stood by the Defendant and Caffree while Officer Julien searched the Pathfinder for the IDs.  Officer Julien located the IDs in the Pathfinder.  Defendant had a Florida ID card and Caffree had a Pennsylvania driver's license.  While Officer Reyes ran the IDs, Officer

Julien told Defendant that he should not be driving without a license.  Defendant responded that Caffree was driving the Pathfinder and that the car belonged to his mother.  After running the IDs, Officer Reyes learned that Defendant had a bench warrant and was a gang member.  The Officers then arrested Defendant on the bench warrant.  Because Defendant was still in his underwear, Caffree showed Officer Reyes where Defendant's pants were in the Pathfinder.  Officer Reyes retrieved Defendant's pants from the rear-passenger-side of the vehicle.

Officer Julien placed Defendant in the back of a patrol vehicle and Officer Reyes began to search the driver's side of the vehicle.  Officer Reyes discovered a loose bullet in the door handle.  She also found a Glock handgun and a jar of marijuana.  Officer Reyes showed Officer Julien what she found.  The Officers proceeded to search the rest of the Pathfinder.  They found a duffle bag filled with marijuana.  At this point, Officer Reyes formally detained Caffree.  The Officers continued their search of the Pathfinder and found a suitcase filled with marijuana and a bag of cocaine.  In total, the Officers recovered 4.8 kilograms of marijuana and 36 grams of cocaine from the Pathfinder.  While Defendant was in state custody, he made numerous allegedly incriminating statements during jail calls.

## II.     DISCUSSION

The Fourth Amendment prohibits "unreasonable searches and seizures."  U.S. CONST. amend. IV.  This prohibition extends to vehicles.  *See Byrd v. United States*, 138 S. Ct. 1518, 1526 (2018).  Below, the Court evaluates whether the initial seizure and later search of the vehicle was constitutional, as well as whether Defendant has standing to challenge the search.

### A.     Reasonable Suspicion to Stop Defendant

Defendant contends that Officer Julien lacked reasonable suspicion to seize him.  (Mot. at 2–4; Def. Arg. at 1, ECF No. 55).  "[L]aw enforcement may seize a suspect for a brief,

investigatory *Terry* stop where (1) the officers have a reasonable suspicion that the suspect was involved in, or is about to be involved in, criminal activity, and (2) the stop 'was reasonably related in scope to the circumstances which justified the interference in the first place.'" *United States v. Jordan*, 635 F.3d 1181, 1186 (11th Cir. 2011) (quoting *Terry v. Ohio*, 392 U.S. 1, 22 (1968)); *see also Miller v. Harget*, 458 F.3d 1251, 1258–59 (11th Cir. 2006) ("A detention is reasonable under the Fourth Amendment if 'the officer's action is supported by reasonable suspicion to believe criminal activity 'may be afoot.'"). A *Terry* stop must be "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20.

"While reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (quotations omitted). An "inchoate and unparticularized suspicion or hunch" is not enough. *United States v. Powell*, 222 F.3d 913, 917 (11th Cir. 2000) (quoting *Terry*, 392 U.S. at 917)). The Court looks to the totality of the circumstances to determine whether reasonable suspicion existed to seize Defendant. *See id.* "Officers may 'draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.'" *Harget*, 458 F.3d at 1259 (citations omitted). But an "individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime." *Wardlow*, 528 U.S. at 124.

As a starting point, the Court finds that Officer Julien stopped Defendant when he pointed his gun at Defendant when Defendant opened the vehicle door. A reasonable person would not feel free to leave. Based on the totality of the circumstances, the Court finds that Officer Julien

had reasonable suspicion for the seizure.  Namely, law enforcement had received a call from an anonymous tipster that a truck had been parked behind her home in a grassy alleyway since the previous night.  The information provided in the tip was corroborated by presently observable facts and the prediction of future conduct, in this case, loitering in an area unusual for law-abiding citizens.  Moreover, the vehicle was parked in a high-crime area.  In Officer Julien's experience, prostitution, burglary, and vehicle theft frequently occurred there.  Further, when Officer Julien arrived at the scene, he could not see into the vehicle because the windows were heavily tinted.  Viewing these facts in their totality, the Court finds that Officer Julien had reasonable suspicion that Defendant was involved in criminal activity, such a loitering and prowling, which warranted further investigation.  *See* § 856.021, Fla. Stat.  Even if the corroborated anonymous tip was not enough in it of itself to establish reasonable suspicion, when Officer Julien arrived at the scene, he had reasonable suspicion that Defendant was "about to be involved in" the criminal activity of operating a vehicle with too-darkly-tinted windows.  *See* § 316.2953, Fla. Stat.; *see also United States v. Sims*, No. 20-12774, 2022 U.S. App. LEXIS 25494, at *15 (11th Cir. Sept. 12, 2022) ("[T]he initial traffic stop was lawful because Mr. Sims was stopped based on probable cause that his vehicle's windows were tinted beyond the legally acceptable parameters.").[1]

### B.      Probable Cause to Search the Vehicle

Even if the investigatory stop was lawful, Defendant argues that the search of his vehicle violated his Fourth Amendment rights because it was not supported by probable cause.  (Mot. at 4).  Specifically, Defendant argues that a warrantless search occurred when Officer Julien told Defendant, after he exited the vehicle, to open his vehicle door after he had closed it.  (Def. Arg.

---

[1]      "While there are obvious differences between a traffic stop and a *Terry* stop, the United States Supreme Court recognizes that the two are analogous both in their duration and atmosphere." *United States v. Gibbs*, 917 F.3d 1289, 1291 (11th Cir. 2019).

at 3, ECF No. 55).  The Court does not agree.  Because the Pathfinder's windows were heavily tinted, Officer Julien reasonably ordered Defendant to open his driver-side door when he exited the vehicle and reasonably searched the rear of the vehicle to ensure the Pathfinder had no additional occupants.  *See United States v. Hensley*, 469 U.S. 221, 235 (1985) (holding that officers "were authorized to take such steps as were reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop"); *United States v. Williams*, 845 F. App'x 864, 867 (11th Cir. 2021) ("We have held that, under *Terry*, an officer during a traffic stop may conduct a protective search of the driver, the passengers, or the vehicle as necessary to ensure officer safety.").  Officer Julien's reasonable efforts to secure his safety did not violate Defendant's constitutional rights.

To the extent Defendant argues that an additional warrantless search occurred before Officer Reyes discovered the bench warrant for Defendant, it was justified by the automobile exception.  Under the automobile exception, law enforcement may search a car without a warrant if it "is readily mobile and probable cause exists to believe it contains contraband[.]" *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996); *see also United States v. Nixon*, 918 F.2d 895, 903 (11th Cir. 1990) ("[T]he requirement of exigent circumstances is satisfied by the 'ready mobility' inherent in all automobiles that reasonably appear to be capable of functioning."); *United States v. Garcia*, 433 F. App'x 741, 744–45 (11th Cir. 2011) ("The mobility requirement focuses on whether the vehicle is capable of functioning, not whether it is likely to move in the near future.").  "Even in cases where an automobile was not immediately mobile, the lesser expectation of privacy resulting from its use as a readily mobile vehicle justifie[s] application of the vehicular exception." *California v. Carney*, 471 U.S. 386, 391 (1985).

With these principles in mind, the Court finds that the Pathfinder was readily mobile because it was capable of functioning.  Next, the Court assesses whether there was probable cause to believe the vehicle contained contraband.  Here, probable cause developed from Officer Julien's reasonable steps to secure his safety.  During this safety sweep of the rear-passenger side of the Pathfinder, Officer Julien smelled marijuana.  The smell of marijuana established probable cause for Officer Julien to search the car for contraband.  *See United States v. Williams*, 731 F. App'x 863, 867 (11th Cir. 2018) ("In a long line of cases, we have held that the smell of marijuana coming from a person's house or vehicle establishes probable cause for a search."); *United States v. Ward*, 722 F. App'x 953, 963 (11th Cir. 2018) (collecting cases) ("It is also well established that if a police officer detects the odor of marijuana, this gives rise to probable cause."); *United States v. Tobin*, 923 F.2d 1506, 1512 (11th Cir. 1991) ("There is no doubt that the agent's suspicions rose to the level of probable cause when, as the door stood open, he detected what he knew from his law enforcement experience to be the odor of marijuana.").

## C.    Standing

The Government argues that Defendant does not have standing to challenge the search of the vehicle because it was his mother's vehicle and Caffree drove it because Defendant did not have a license.  (Resp. at 7–8; Gov. Arg. at 4, ECF No. 54).  At the evidentiary hearing, the parties stipulated to the fact that Defendant's mother is the registered owner of the Pathfinder, that she gave the vehicle to her son several months before the arrest, and that the last she had heard of her son, he was living out of the vehicle.  The parties also stipulated that Defendant's mother had not seen Defendant for several months.  In addition, the body camera footage worn by Officer Julien recorded an exchange where Defendant informed Officer Julien that Defendant had been living out of the Pathfinder since August; in sum, for approximately four months by the time of the arrest.

7

An occupant of a vehicle has standing to challenge a flawed search only if the occupant has a "'legitimate expectation of privacy' in the property when it was searched." *United States v. Dixon*, 901 F.3d 1322, 1338 (11th Cir. 2018) (quoting *United States v. Gibson*, 708 F.3d 1256, 1276 (11th Cir. 2013)).  Although the Government holds the burden to prove that a search was reasonable under the Fourth Amendment, the burden is on the Defendant to establish he has a legitimate expectation of privacy.  *United States v. Cooper*, 133 F.3d 1394, 1398 (11th Cir. 1998). Defendant must show "both a subjective and an objective expectation of privacy" in the vehicle. *United States v. King*, 509 F.3d 1338, 1341 (11th Cir. 2007).  "The subjective component requires that a person exhibit an actual expectation of privacy, while the objective component requires that the privacy expectation be one that society is prepared to recognize as reasonable."  *Id.* at 1341.

"[A] passenger in a private car, . . . . who has no possessory interest in the automobile, does not have a legitimate expectation of privacy in the interior of the automobile because he does not have the right to exclude others from the car."  *United States v. Lee*, 586 F.3d 859, 864 (11th Cir. 2009) (alteration adopted).  Inversely, "[a] passenger who has a possessory interest in the vehicle has a legitimate expectation of privacy in the interior of the vehicle."  *United States v. Arrendondo*, No. 11-cr-63, 2012 U.S. Dist. LEXIS 66919, at *16 (M.D. Fla. May 14, 2012); *United States v. Herrera*, No. 10-cr-37, 2011 U.S. Dist. LEXIS 18416, at *13 (M.D. Ala. Jan. 5, 2011).  "The term 'possessory interest' means 'the present right to control property, including the right to exclude others, by a person who is not necessarily the owner'; or 'a present or future right to the exclusive use and possession of property.'"  *Dixon*, 901 F.3d at 1338 (alterations adopted; quoting *Possessory interest*, Black's Law Dictionary (10th ed. 2014)).

Here, Defendant had been living out of the searched vehicle, which was given to him by his mother whom he had not seen in several months.  On this record, the Court finds that Defendant

had a possessory interest in the vehicle because he had a present right to the exclusive use and

possession of the property.  Even if Defendant was driving the car unlicensed, he would still have

a legitimate expectation of privacy in the vehicle.  *See United States v. Cohen*, 38 F.4th 1364, 1370

(11th Cir. 2022) ("[U]nlicensed driving did not interfere with the authorized renter's valid

possessory interest because he had the renter's permission to use the vehicle.").  In sum, Defendant

has standing to challenge the search.

## III.    CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendant's

Motion to Suppress, (ECF No. 33), is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, 12th day of March, 2023.

_____
JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Magistrate Judge Becerra
All counsel of record